FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 30 2008

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

RECEIVED
MAIL ROOM
JAN 30 2008
U.S. DISTRICT COURT
E. DIST. OF ARKANSAS

# MANDATE

## CERTIFIED QUESTION ANSWERED

STATE OF ARKANSAS
In the Supreme Court

4:06-cv-01576-GTE

Proceedings of January 10, 2008

07-627
AMY FINLEY O/B/O HERSELF AND
W.F., A MINOR CHILD                                        PETITIONER
V. Upon Certification from the United States
   District Court, Eastern District of Arkansas
MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION                                             RESPONDENT

This certified question of law was submitted to the Arkansas Supreme Court on the briefs of the respective parties. After due consideration, it is the decision of the Court that the certified question is answered for the reasons set out in the attached opinion.

> IN TESTIMONY, that the above is a true copy of
> the judgment of the Arkansas Supreme Court. I,
> Leslie W. Steen, Clerk, set my hand and affix the
> seal this 29th day of January, A.D. 2008.
>
> _____
>           Clerk

# SUPREME COURT OF ARKANSAS
No. 07-627

| | |
|---|---|
| AMY FINLEY O/B/O HERSELF AND W.F., A MINOR CHILD,<br>PETITIONER,<br><br>VS.<br><br>MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br>RESPONDENT, | Opinion Delivered January 10, 2008<br><br>UPON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF ARKANSAS, LITTLE ROCK DIVISION, CASE NO. 4:06CV01576 GTE/JTR, THE HONORABLE GARNETT THOMAS EISELE, DISTRICT JUDGE<br><br>CERTIFIED QUESTION ANSWERED. |

**PAUL E. DANIELSON, Associate Justice**

This case involves a question of law certified to this court by the United States District Court for the Eastern District of Arkansas in accordance with Ark. Sup. Ct. R. 6-8 and accepted by this court on June 28, 2007. *See Finley v. Astrue*, 370 Ark. 429, ___ S.W.3d ___ (2007) (*per curiam*). The question certified is the following:

> Does a child, who was created as an embryo through in vitro fertilization during his parents' marriage, but implanted into his mother's womb after the death of his father, inherit from the father under Arkansas intestacy law as a surviving child?

We conclude that the answer to this question is no.

According to the District Court's order, the certified question arises from an appeal by Amy Finley, from the final decision of the Commissioner of the Social Security Administration, Michael Astrue (the Commissioner), which denied her claim for "child's

insurance benefits" under 42 U.S.C. § 402(d).[1] The District Court's order reflects the following facts. On October 6, 1990, Ms. Finley and Wade W. Finley, Jr., were married. During the course of the marriage, the Finleys pursued fertility treatments at the University of Arkansas for Medical Sciences (UAMS), and, ultimately, participated in UAMS's In Vitro Fertilization and Embryo Transfer (IVF/ET) Program.[2] In June of 2001, doctors produced ten embryos using Ms. Finley's eggs and Mr. Finley's sperm. Two of the embryos were

---

[1] The Commissioner's order also denied Ms. Finley's claim for "mother's insurance benefits" under 42 U.S.C. § 402(g).

[2] In vitro fertilization is described as follows:
>After the woman has taken injectable ovulation-inducing medications . . ., multiple oocytes are retrieved from the woman's ovaries by a minor surgical procedure. The oocytes are placed in a petri dish with her male partner's sperm (in vitro) and placed in an incubator for fertilization to occur. The embryos are allowed to grow for a period of three to five days before they are placed back into the woman's uterus.

17-289 *Attorneys' Textbook of Medicine* P.289.65 (3d ed. 2007). It differs entirely from artificial insemination:
>Intrauterine insemination, also known as artificial insemination, refers to the placement of sperm into the uterine cavity. Intrauterine insemination may be performed at the time of ovulation in the woman's normal menstrual cycle, or with the use of medications that induce ovulation. In most cases, the female partner takes fertility medications in advance of the procedure. The man must produce sperm at the time the woman is ovulating; the sperm (after undergoing certain "washing" procedures) are then inserted into the woman's uterine cavity through a long, thin catheter.

17-289 *Attorney's Textbook of Medicine* P.289.81 (3d ed. 2007).

The District Court's order further observes that in participating in the IVF/ET program at UAMS, the Finleys executed a consent form. That form is not before us; however, we note that the Worker's Compensation Commission awarded benefits to the child based, at least in part, on the consent form's language. *See Finley v. Farm Cat, Inc.*, WCC No. F108515 (Dec. 27, 2006).

implanted into Ms. Finley's uterus and four embryos were frozen for preservation.[3] Ms. Finely later suffered a miscarriage of both of the implanted embryos.

On July 19, 2001, Mr. Finely died intestate while domiciled here in Arkansas. A little less than one year later, on June 26, 2002, Ms. Finley had two of the previously frozen embryos thawed and transferred into her uterus, resulting in a single pregnancy. On February 14, 2003, prior to the child's birth, the Lonoke County Circuit Court entered an order providing that upon the baby's delivery,

> the State Registrar of the Arkansas Department of Health, Division of Vital Records, shall enter and state upon the certificate of birth that Wade W. Finley, Jr., now deceased, is the father of [W.F.]; [a]nd that, thereafter, all State and Federal Agencies, of the United States of America, shall uphold the findings of this Court's conclusion of paternity – in [Plaintiff] the mother and Wade W. Finley, Jr. the father – for any and all lawful purposes; and, that [W.F.] is the legitimate child of [Plaintiff] and Wade W. Finely, Jr. for any and all lawful purposes.

The child was born on March 4, 2003, and on April 11, 2003, Ms. Finley filed a claim for mother's insurance benefits and the child's claim for child's insurance benefits, based on the earnings record of Mr. Finley. The claims were denied at the initial and reconsideration levels; however, an Administrative Law Judge (ALJ) issued a decision on June 16, 2006, awarding both mother's and child's insurance benefits.

On December 14, 2006, the Appeals Council reversed the ALJ's decision, finding that Ms. Finley's claims were without merit. Ms. Finley then filed her complaint with the District Court on October 13, 2006, appealing the final decision of the Commissioner. The parties

---

[3]The District Court's order notes that the remaining four embryos were not preserved.

filed a joint motion to certify the instant question of law to this court and to stay briefing before the District Court. The District Court granted the motion, certified the instant question to this court, and we accepted certification, as already stated.

In the briefs before us, Ms. Finley argues that her child was "conceived" at the time her egg was fertilized by the father's sperm. She contends that there is no statutory prohibition in Arkansas preventing a natural child who was conceived by in vitro fertilization from inheriting from his father. She avers that the General Assembly was aware of in vitro fertilization procedures in light of the fact that it mandated all accident and health insurance companies include in vitro fertilization as a covered expense in Ark. Code Ann. § 23-85-137(a) (Repl. 2004) and was aware of assisted reproductive technologies by its reference to artificial insemination in Ark. Code Ann. § 28-9-209(c) (Repl. 2004). She urges that based upon the medical definitions of "conception," the child born of the Finleys' union was not posthumously conceived and that as a matter of public policy, all children's rights should be protected, including their rights to property and inheritance.

The Commissioner responds that Arkansas intestacy law does not provide inheritance rights from a biological father to a child who was created as an embryo through in vitro fertilization during his parents' marriage, but implanted into his mother's womb after the death of the father. He argues that the Finleys' child was neither born nor conceived during the Finleys' marriage, which ended upon Mr. Finley's death. The Commissioner maintains that the logical interpretation of the term "conception" or "conceived," as used in Arkansas's intestacy provisions, is to mean the onset of pregnancy, or the successful implantation of an

embryo in the womb. He asserts that the General Assembly has not amended the intestate succession statutes to expand the definition of conception to include the creation of embryos during the in vitro fertilization process and that absent a statutory amendment to encompass an IVF-created embryo, this court should conclude that the General Assembly did not intend for such embryos to be considered "conceived" within the terms of the intestacy statutes. He further points out that the General Assembly, and not the courts, determines public policy. Finally, the Commissioner submits, given the fact that inheritance laws require finality, it is unlikely that the legislature defined the term "conception" to include a medical procedure that could result in a biological birth many years after the father's death. Ms. Finley replies that the General Assembly has been well aware of assisted reproduction for a number of years and, had it chosen to do so, it could have enacted legislation to prevent such an inheritance.

A review of the benefits being sought and the orders leading to the certification of the instant question was set forth in the District Court's certification order. It provides that

> [u]nder the Social Security Act, a child is entitled to child's insurance benefits if he is the child of an individual who dies while insured, if the child was dependent upon the insured at the time of the insured's death. *See* 42 U.S.C. § 402(d). "Child" means "the child or legally adopted child of an individual[.]" 42 U.S.C. § 416(c). In determining whether a claimant is the "child" of a deceased insured, the Commissioner is instructed to "apply such law as would be applied in determining the devolution of intestate personal property . . . by the courts of the State in which [the insured] was domiciled at the time of his death[.]" 42 U.S.C. § 416(h)(2)(A). Social Security regulations provide further guidance on determining "child" status, including that a claimant be the insured's "natural child," meaning that the claimant "could inherit the insured's personal property as his or her natural child under State inheritance law[s]." *See* 20 C.F.R. §§ 404.354 and 404.355(a)(1). In deciding whether the claimant has "inheritance rights as the natural child of the insured[,]" the Commissioner uses "the law on inheritance rights that the State courts would use to decide whether you could inherit a child's share of the insured's personal property if

the insured were to die without leaving a will." *See* 20 C.F.R. § 404.355(b)(1).

During the administrative proceedings in this case, Plaintiff claimed that there were no Arkansas statutes specifically addressing the inheritance rights of a child conceived through in vitro fertilization, but that, pursuant to Ark. Code Ann. § 28-9-209(c), W.F. was "conceived" as a "zygote" prior to his father's death, while his parents were married. Thus, she argued that W.F. had inheritance rights under that statute. The Commissioner acknowledged the lack of a "clear definition" of "conception" under Arkansas state law, but looked to "the generally accepted definition of the term in the medical community" and concluded that "conception" occurred when "the embryo was implanted in [Plaintiff's] uterus after the wage earner died." The Commissioner also rejected Plaintiff's reliance on both Ark. Code Ann. § 11-9-507, a worker's compensation statute which does not "govern inheritance issues," and the Lonoke Circuit Court Order, which was "not consistent with the law as enunciated by the highest court in the State of Arkansas."

According to the Commissioner's findings: (1) W.F. was the biological child of Wade W. Finley, Jr. who was not married to Plaintiff at the time that W.F. was conceived or born; and (2) W.F. did not have "inheritance rights in [Wade W. Finley, Jr.'s] estate" and thus did "not have status as the child of the wage earner pursuant to [42 U.S.C. § 416(h)(2)(A)]." Because Plaintiff's claim for "mother's insurance benefits" was contingent on having "an entitled child of the wage earner in her care," the Commissioner found that this claim also lacked merit.

(Internal footnotes and citations to transcript omitted.)

Having been presented with the instant question, we turn to our statutes on intestate succession. Title 28, Chapter 9 of the Arkansas Code Annotated sets forth Arkansas's law on intestate succession, entitled the "Arkansas Inheritance Code of 1969." Arkansas Code Annotated § 28-9-203(a) (Repl. 2004) provides that "[a]ny part of the estate of a decedent not effectively disposed of by his or her will shall pass to his or her heirs as prescribed in the following sections." Ark. Code Ann. § 28-9-203(a) (Repl. 2004).

The instant certified question presents a posthumous child.[4] In order to inherit as a posthumous heir under Arkansas law, the child must not only have been born after the decedent's death, but must also have been conceived before the decedent's death:

> (a) Posthumous descendants of the intestate *conceived before his or her death* but born thereafter shall inherit in the same manner as if born in the lifetime of the intestate.

Ark. Code Ann. § 28-9-210(a) (Repl. 2004) (emphasis added). In order to answer the question certified to this court, we must, then, determine whether a child, created as an embryo through in vitro fertilization during the child's parents' marriage, but implanted into the child's mother's womb after the death of the child's father, was "conceived before" the decedent's death. This requires us to construe section 28-9-210(a).

The basic rule of statutory construction is to give effect to the intent of the legislature. *See McMickle v. Griffin*, 369 Ark. 318, ___ S.W.3d ___ (2007). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *See id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See id.* We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *See id.* Furthermore, we are very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *See*

---

[4]While our statutory code does not define this term, *Black's Law Dictionary* defines the term "posthumous child" as: "A child born after a parent's death." *Black's Law Dictionary* 255 (8th ed. 2004).

*Arkansas Beverage Retailers Ass'n, Inc. v. Moore*, 369 Ark. 498, ___ S.W.3d ___ (2007).

It is clear from the statute that in order to inherit through intestate succession as a posthumous descendant, the child must have been conceived before the decedent's death. However, the statutory scheme fails to define the term "conceived." While we could define that term, we find there is no need to do so, as we can definitively say that the General Assembly, in enacting Act 303 of 1969, § 12, now codified at Ark. Code Ann. § 28-9-210, did not intend for the statute to permit a child, created through in vitro fertilization and implanted after the father's death, to inherit under intestate succession. Not only does the instant statute fail to specifically address such a scenario, but it was enacted in 1969, which was well before the technology of in vitro fertilization was developed. *See* Janet L. Dolgin, *Surrounding Embryos: Biology, Ideology, & Politics*, 16 HEALTH MATRIX: J.L. & MED. 27 (2006) (observing that the first birth resulting from in vitro fertilization was in 1978). *See also* Dena S. Davis, *The Puzzle of IVF*, 6 HOUS. J. HEALTH L. & POL'Y 275 (2006) (observing that the first successful birth of a child from a cryopreserved embryo was in 1984).

Both of the interested parties in this case cite to several decisions by both federal and state courts involving at least similar issues. *See Khabbaz v. Commissioner*, 930 A.2d 1180 (N.H. 2007) (holding that a child conceived after her father's death via artificial insemination was not a "surviving issue" under New Hampshire intestacy law and, thus, was not eligible to receive a portion of her father's estate); *Stephen v. Commissioner of Social Security*, 386 F. Supp. 2d 1257 (M.D. Fla. 2005) (holding that the Commissioner properly determined that the child was not entitled to child's survivor benefits, where under Florida law, a child

conceived from the sperm of a person who died before the transfer of sperm to a woman's body was not eligible for a claim against the decedent's estate unless the child was provided for by the decedent's will); *Gillett-Netting v. Barnhart*, 371 F.3d 593 (9th Cir. 2004) (holding that because the children, both of whom were the result of in vitro fertilization of the mother's eggs by the decedent's sperm after his death, were the decedent's legitimate children under Arizona law, they were deemed dependent under 42 U.S.C. § 402(d) and did not need to demonstrate actual dependency nor deemed dependency under 42 U.S.C. § 416(h)); *Woodward v. Commissioner of Social Security*, 435 Mass. 536, 760 N.E.2d 257 (2002) (holding that where the surviving parent or the child's other legal representative demonstrates a genetic relationship between the posthumously reproduced child and the decedent, and where the survivor or representative establishes both that the decedent affirmatively consented to posthumous conception and to the support of any resulting child, the child *may* enjoy the inheritance rights of "issue" under Massachusetts's intestacy law, so long as time limitations do not preclude the commencement of succession rights on behalf of the child). While those opinions appear thoughtful and well-reasoned under each state's respective code provisions or lack thereof, they are of no assistance in interpreting our specific Arkansas statute. In addition, both parties discuss Ark. Code Ann. § 28-9-209(c) (Repl. 2004), which provides:

> (c) Any child conceived following artificial insemination of a married woman with the consent of her husband shall be treated as their child for all purposes of intestate succession. Consent of the husband is presumed unless the contrary is shown by clear and convincing evidence.

Ark. Code Ann. § 28-9-209(c). That statute is inapposite for two reasons. First and foremost, the statute goes to the legitimacy of a child, and, second, it specifically references artificial

insemination, not in vitro fertilization, which, as already noted in the footnote above, are two completely different procedures.

While the parties would have us define the term "conceive," we decline to do so in the instant case. Our role is not to create the law, but to interpret the law and to give effect to the legislature's intent. *See, e.g., Miller v. Tatum*, 170 Ark. 152, 279 S.W. 1002 (1926); *Williams v. Buchanan*, 86 Ark. 259, 110 S.W. 1024 (1908). In vitro fertilization and other methods of assisted reproduction are new technologies that have created new legal issues not addressed by already-existing law. *See, e.g., Gillett-Netting v. Barnhart, supra* (observing that "[d]eveloping reproductive technology has outpaced federal and state laws, which currently do not address directly the legal issues created by posthumous conception"); *Woodward v. Commissioner of Social Security, supra* (observing that "with the act of procreation now separated from coitus, posthumous reproduction can occur under a variety of conditions that may conflict with the purposes of the intestacy law and implicate other firmly established State and individual interests"). Were we to define the term "conceive," we would be making a determination that would implicate many public policy concerns, including, but certainly not limited to, the finality of estates. That is not our role. The determination of public policy lies almost exclusively with the legislature, and we will not interfere with that determination in the absence of palpable errors. *See Jordan v. Atlantic Cas. Ins. Co.*, 344 Ark. 81, 40 S.W.3d 254 (2001). With this is mind, we strongly encourage the General Assembly to revisit the intestacy succession statutes to address the issues involved in the instant case and those that have not but will likely evolve.

For the foregoing reasons, we answer the certified question in the negative.

IN TESTIMONY, That the above is a true copy of the opinion of said Supreme Court rendered in the case therein stated, I, Leslie W. Steen, Clerk of said Supreme Court, hereunto set my hand and affix the Seal of said Supreme Court, at my office in the City of Little Rock this __29th__ day of ____January____, A.D., 2008.

_____
Clerk

By _____
D.C.